IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 20, 2007**

Charles R. Fulbruge III
Clerk

No. 06-10894

THE PARKER GROUP INC

Plaintiff-Appellant

v.

MICHAEL P BRYAN

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:05-CV-230

Before DAVIS, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

This appeal arises from a dispute between Plaintiff-Appellant The Parker Group, Inc. ("Parker Group") and Defendant-Appellee Michael P. Bryan ("Bryan") over the terms of a contract (the "Agreement") that set forth the conditions of Parker Group's purchase of all the outstanding shares of American Administrative Group, Inc. ("AAG"). At the time of the purchase, Bryan, who held a majority of AAG's shares, had negotiated for AAG to purchase Gallagher Benefit Administrators, Inc. ("GBA"). As part of the Agreement, Parker Group

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

agreed to pay Bryan additional consideration should Parker Group successfully complete the purchase of GBA under the terms negotiated by Bryan. Parker Group ultimately purchased GBA and, therefore, owed the additional amount to Bryan.

Pursuant to the Agreement, Bryan was to receive Seller Note B, a promissory note, for the amount owed to him by Parker Group. The amount of Seller Note B was to be determined, in part, by using GBA's Normalized EBITDA[1], which was to be calculated from GBA's audited financial statements. At the time the parties negotiated the Agreement, GBA's audited financial statements were not available, so the Agreement called for Seller Note B to be issued based on the parties' estimated numbers and automatically adjusted once the audited financial statements became available. Seller Note B was issued approximately two months after the parties signed the Agreement, and Parker Group calculated GBA's Normalized EBITDA at an amount that resulted in Seller Note B being issued for over $7 million. Parker Group now seeks to reduce the amount of Seller Note B by approximately $6 million based on GBA's audited financial statements. However, at the time Seller Note B was issued, Parker Group was in possession of GBA's audited financial statements and gave indications that it based the $7 million amount on those statements.

Parker Group filed a declaratory judgment action against Bryan, seeking a declaration that the amount of Seller Note B should be reduced. The parties filed cross-motions for partial summary judgment, and the district court ruled in favor of Bryan and issued a judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Parker Group appealed to this court.

We have now reviewed the record and examined the parties' arguments, and we agree with Bryan's position. Although the Agreement contemplated an

---

[1] EBITDA stands for Earnings Before Interest, Taxes, Depreciation, and Amortization.

adjustment to Seller Note B once GBA's Normalized EBITDA could be calculated from GBA's audited financial statements, there is nothing in the Agreement that prohibits the parties from making a final determination as to GBA's Normalized EBITDA prior to the issuance of Seller Note B if the financial statements are available at that time. The record indicates that the financial statements were available and that Parker Group relied on those statements in agreeing to the $7 million Seller Note B. Consequently, we AFFIRM the judgment of the district court.

AFFIRMED.